FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 FEB -7 PM 12: 25
FEB 07 2001
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES FAULKNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 98-514** |
| **BURL CAIN, WARDEN** | **SECTION "L" (3)** |

## ORDER AND REASONS

Before the Court is a petition for habeas corpus relief filled by Charles Faulkner. Petitioner, a prisoner incarcerated in the Louisiana State Penitentiary, located in Angola, Louisiana, was convicted of first degree murder in violation of Louisiana Revised Statute 14:30 following a jury trial and brings this successive petition pursuant to Title 28 of the United States Code § 2254. As grounds for relief, Faulkner claims that the prosecution presented falsified evidence and suppressed exculpatory evidence at trial resulting in substantial doubt as to the reliability of the result of the trial in which Faulkner was convicted. Upon review of the record and the relevant law, this Court has determined that Faulkner's petition for habeas should be GRANTED for the reasons set forth below.

### I. BACKGROUND

Steven Radoste was killed at his home on January 27, 1982. The Petitioner, Charles Faulkner, and Frederick Kirkpatrick were at Radoste's home at the time of the killing. Faulkner

was subsequently convicted of first degree murder and sentenced to life in prison.

At his trial, Faulkner stated that he and Kirkpatrick had been hitchhiking from Mississippi to New Orleans, when Radoste, who they did not know, picked them up and offered to let them spend the night at his house. *See* Tr. of *State v. Faulkner*, Jan. 13, 1983, p. 842-43. Faulkner testified that Kirkpatrick killed Radoste in anger after Radoste made an unwanted homosexual advance towards Kirkpatrick. According to Faulkner, Kirkpatrick had taken a shower at Radoste's home and entered the living room wearing a only towel. *See id.* at 844. Radoste, also wearing only a towel, had a conversation with Kirkpatrick that Faulkner did not hear. Radoste then left the room and returned holding a gun. *Id.* at 845. At that point Radoste told Kirkpatrick, "You're going to do this one way or another." *Id.* Faulkner then testified that Kirkpatrick hit Radoste in the head with an object, stabbed him twice and shot him in the head. *See id.* at 846-47. Faulkner and Kirkpatrick then loaded Radoste's belongings into his truck, returned to Mississippi and burned the truck. *See id.* at 851-53, 861. Petitioner testified that he assisted in loading the truck because he was frightened of Kirkpatrick. *See id.* at 853.

The prosecutor, on the other hand, argued that Faulkner and Kirkpatrick intended to rob and kill Radoste. The State's theory was that even if Faulkner did not kill Radoste himself, he should be found guilty as a principal because he was present and took an active part in the offense and attempted cover up. Faulkner was convicted of first degree murder in violation of Louisiana Revised Statute 14:30 and sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension. *See State v. Faulkner*, 447 So. 2d 1139 (La. App. 1st Cir. 1984).

## II. UNCONSTITUTIONAL SUPPRESSION OF EXCULPATORY AND MATERIAL EVIDENCE

The prosecution's theory at trial was that while Faulkner did not kill Radoste himself, he had sufficient *mens rea* to be guilty of first degree murder as a principal. Faulkner's theory was that Kirkpatrick acted out of rage and anger, and that Faulkner did not have the required intent to kill, injure or rob Radoste.

The act that Faulkner argued aroused Kirkpatrick's rage and anger was a homosexual advance. At trial, the State presented evidence that Radoste was heterosexual which undermined Faulkner's defense. St. Tammany Parish Detective William McCormick testified that no homosexual pornography had been present at the victim's house. Detective McCormick stated that the only pornography found at Radoste's house was a stack of magazines featuring naked women and suggested that Radoste was "possibly a collector of Playboy magazines." Trial Tr. at 905-06, Jan. 13, 1983. In closing argument, the prosecutor criticized references to the victim's sexual orientation as baseless and unjustified attacks. *See id.* at 920-21.

The State also introduced evidence that a crutch was located near the victim's body when he was killed. *Id.* at 905. Beyond the potential of generating sympathy for the victim, the crutch tended to discount the victim's ability to present the type of threat that would justify deadly force in self-defense. In addition, Faulkner was never informed that a drawer full of rubber gloves, which apparently can be associated with homosexual activity, was found at Radoste's house.

Petitioner asserts that the prosecution withheld the identity of the first two officers on the scene. At a post-conviction state court evidentiary hearing held on November 15, 1996, Dorothy Hibben testified that she and Donna Chexnayder were the first two officers to arrive at the scene

of the crime. Ms. Hibben was a deputy sheriff with the Pearl River Police Department at the time of the crime. At that same evidentiary hearing, William Alford, Jr., the lead prosecutor in Faulkner's criminal trial, stated that he "was sure I probably saw" the arrest report that identified the first two officers on the scene as Pearl River police officers. *See* Evidentiary Hr'g Tr. at 53, Nov. 16, 1996.

Frederick Kirkpatrick was tried separately, convicted, and sentenced to death. In a successive habeas corpus petition, Kirkpatrick claimed the prosecutor presented falsified testimony and suppressed exculpatory evidence. Kirkpatrick based these claims on the affidavits of Officers Hibben and Chexnayder. In their affidavits, neither officer recalled a crutch near the victim's body. Both officers recalled being shown homosexual pornography, and a drawer full of rubber gloves, which apparently could be related to homosexual activity. The United States Fifth Circuit Court of Appeals found that Kirkpatrick properly presented his claims in a successive habeas corpus petition because the evidence was previously unavailable to him, vacated the District Court's denial of Kirkpatrick's habeas petition and ordered the District Court to conduct an evidentiary hearing as to the *Brady* issues. *See Kirkpatrick v. Whitley,* 992 F.2d 491 (5th Cir. 1993); *see also Brady v. Maryland*, 373 U.S. 83 (1963). Before that hearing was held, Kirkpatrick plead guilty in exchange for a life sentence and withdrew his habeas petition.

### III. PROCEDURAL HISTORY

Petitioner appealed to the First Circuit Court of Appeal, alleging eight specifications of error. The Court of Appeal affirmed his conviction and sentence. *See State v. Faulkner*, 447 So.2d. 1139 (La. App. 1st Cir. 1984). A writ application was filed and the Louisiana Supreme

Court denied the writ on April 23, 1984. *See State v. Faulkner*, 449 So.2d 1345 (La. 1984). The petitioner filed subsequent petitions for post conviction relief in State Court, and writs to the Louisiana Supreme Court, all of which were denied.

Petitioner then filed a claim for post conviction relief in State Court on September 20, 1995. The petitioner asserted four claims for relief: 1) that his conviction was unconstitutionally obtained; 2) that the District Attorney withheld *Brady* material; 3) that there was discriminatory selection of the grand jury forepersons; and 4) that he received ineffective assistance of counsel.

The State Court found that claims 1 and 2 of the application were timely filed because of newly discovered evidence, and dismissed claims 3 and 4 as time-barred. *See Faulkner v. Cain*, No. 96,597 (La. Dist. Ct. Nov. 26, 1996). The Court held an evidentiary hearing on this matter on November 15, 1996. Dorothy Hibben testified at the evidentiary hearing. She stated that at the time of Radoste's killing she had been a deputy sheriff in the Pearl River Police Department for three years and that she and Donna Chexnayder were the first officers on the scene of Radoste's death. She testified that she and Chexnayder were on the scene when St. Tammy Parish Sheriff's Office Detectives William McCormick and E.L. Hermann arrived. She further stated that she had no recollection of a crutch being near Radoste's body. She specifically recalled someone with the St. Tammy Parish Detectives showing her rubber gloves and Detective McCormick showing her pornographic magazines depicting nude men. *See* Evidentiary Hr'g Tr. at 14, 35, Nov. 15, 1996. She further recalled that there was a discussion at the crime scene regarding the gloves and their use. *See id.* at 16. Neither she nor Chexnayder testified at Faulkner's criminal trial.

At the evidentiary hearing, Detective McCormick testified that he was not aware of any

pornographic magazines at the crime scene except some Playboy-type magazines that depicted women. *Id.* at 69-70. He further testified that if there was a crutch in his sketch, then it must have been at the crime scene. *Id.* at 67. This testimony was consistent with his testimony at Faulkner's criminal trial.

In its Reasons for Judgment, the State Court found "Ms. Hibben to be far more credible than Officer McCormick." *Faulkner v. Cain*, No. 96,597 at 2 (La. Dist. Ct. Nov. 26, 1996). The Court continued:

> This Court was very impressed by Ms. Hibben's frank testimony. She had no apparent motive to give false testimony; whereas, Officer McCormick was more hesitant and often evasive in his testimony.
>
> In sum, this Court finds that Ms. Hibben is telling the truth when she states that these were male nude, pornographic magazines and rubber gloves at the scene of the crime. With respect to the crutch, the Court does not believe Faulkner carried his burden of proving that the crutch was not at the scene as depicted in the crime scene sketch prepared by Officer McCormick.
>
> The prosecutor, Bill Alford, also testified at the evidentiary hearing, and although it was established that, at the time he tried Faulkner, he knew or should have known that two Pearl River Police Department Deputies (Ms. Hibben and Ms. Chexnayder) were the first on the scene, it was not established that he knew of the rubber gloves or the male, nude pornographic magazines.

*Id.* at 2-3.

The Court denied relief, concluding that Faulkner had not proven that the prosecution knowingly used false evidence, and that the suppressed evidence was not material, whether used directly as part of Faulkner's defense or as impeachment evidence. *Id.* at 3-5.

Petitioner applied to the Louisiana First Circuit Court of Appeal for a writ of review. The writ was denied on May 2, 1997. *See In re Charles Faulkner*, 97-KW-0560 (La. App. 1st Cir. May 2, 1997). Petitioner then applied to the Louisiana Supreme Court seeking supervisory

and/or remedial writs. That application was denied on December 12, 1997. *See Faulkner v. State*, 704 So.2d 1183 (La. 1997).

Faulkner next filed an application with the U.S. Fifth Circuit Court of Appeals requesting permission to file a successive 28 U.S.C. § 2254 application in this Court. On January 22, 1998, the Fifth Circuit, in case number 97-611, found that petitioner had made a prima facie showing that he met the requirements of 28 U.S.C. § 2244(b)(2) with regard to the *Brady* issues raised in his application, and he was permitted to file this successive petition.

On February 3, 1998, Faulkner filed this petition for a writ of habeas corpus which was filed in the Clerk's Office on February 12, 1998. On May 13, 1999, this Court ordered that an evidentiary hearing be held to determine the merits of the *Brady* issues. However, before the hearing took place, the parties stipulated to the testimony contained in the state court record in lieu of an evidentiary hearing. Petitioner then submitted a Memorandum in Support of Application for Writ of *Habeas Corpus* claiming that his conviction was obtained by virtue of unconstitutional suppression of exculpatory and material evidence. The State of Louisiana filed a Memorandum in Opposition.

### IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, enacted by Congress in 1996, placed new constraints on the power of federal courts to grant writs of habeas corpus to state prisoners. *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (O'Connor, J., for the Court).

Congress enacted the AEDPA on April 24, 1996, and it applies to all federal habeas

corpus petitions filed after that date. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Nobles v. Johnson*, 127 F.3d 409, 414 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998). Faulkner signed, and thus effectively filed his petition on February 3, 1998.[1] Thus, the provisions of the AEDPA govern Faulkner's habeas petition.

The AEDPA, among other things, amended 18 U.S.C. § 2254 to provide new standards for federal courts to apply in their review of habeas petitions. For questions of law, and mixed question of law and fact, a federal court may grant habeas relief only if it determines that a state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Willimas v. Cain*, 229 F.3d 468, 474 (5th Cir. 2000).[2]

The Supreme Court in *Williams v. Taylor* addressed how federal courts should apply these standards. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13.[3]

---

[1] A habeas corpus petition is considered "filed" by a pro se petitioner when it is delivered to a prison custodian. *See Spotville v. Cain*, 149 F.3d 374, 375-76 (5th Cir. 1998).

[2] The question of whether evidence was unconstitutionally suppressed is a mixed question of law and fact. *See Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999).

[3] The *Williams* Court further explained that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." 529 U.S. at 409-10. Furthermore, the

A habeas petitioner must exhaust all his state remedies before petitioning for federal judicial relief. *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). The petitioner's habeas claims must be factually exhausted as well as legally exhausted. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993). Faulkner has asserted to this Court the same claims that he asserted to both the state appellate court and the Louisiana Supreme Court in his post-conviction applications for writ. Faulkner has exhausted his state remedies and is thus properly before this Court for habeas corpus review. This Court finds that Faulkner's petition is not otherwise procedurally barred, and is appropriate for a decision on the merits.

## V. BRADY STANDARD

The Supreme Court has held that suppression of evidence that is material to either guilt or punishment, violates due process whether or not the state acted in good faith. *Brady*, 373 U.S. 83, 87 (1963). To prevail on a Brady claim, a defendant must "demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was 'material either to guilt or punishment.'" *Id.; Vega v. Johnson*, 149 F.3d 354, 363 (5th Cir. 1998), *cert. denied.*, 525 U.S. 1119 (1999). Evidence withheld in violation of a prosecutor's obligation under *Brady* is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United*

---

Court confirmed that "an unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* at 412. The Court also clarified that the phrase "clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.*

*States v. Bagley*, 473 U.S. 667, 682 (1985).

The Supreme Court has "since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citations omitted). The *Brady* disclosure rule encompasses evidence "known only to police investigators and not to the prosecutor" and imposes on individual prosecutors "a duty to learn of any favorable evidence known to the others acting on the government's behalf . . . including the police." *Id.* at 280-81 (citations omitted).

1. The Prosecution Suppressed the Evidence.

The prosecution has a duty to learn of any exculpatory evidence known to police officers and others working on the government's behalf, and to disclose such evidence to the defendant. *See id.* In Faulkner's case, the prosecutor breached this duty. The State Court Judge found that Ms. Hibben's testimony at the State evidentiary hearing was credible and that the magazines and the rubber gloves had, in fact, been present at the crime scene. This evidence was not disclosed to the defendant. No evidentiary hearing was held by this Court because the parties stipulated to the testimony in the State Court Record. After reviewing the record, this Court concludes that the prosecution did suppress evidence of Hibben and Chexnayder's presence on the scene, the presence of homosexual pornographic magazines, and the rubber gloves found at Radoste's home.

2. <u>The Evidence was Favorable to the Accused</u>.

The theory of Faulkner's defense was that Kirkpatrick became belligerent and struck the victim in response to an unwelcomed sexual advance and not pursuant to any plan or scheme in which Faulkner participated. The withheld evidence in this case could support Mr. Faulkner's version of the events that night and allow a jury to conclude that this evidence was favorable to his defense. It is significant to note that even William Alford, the lead prosecutor in Faulkner's criminal case admitted at the evidentiary hearing that the rubber gloves and pornographic magazines would have been critical to Faulkner's defense. *See* Evidentiary Hr'g Tr. at 48, Nov. 15, 1996.

3. <u>The Evidence was Material Either to Guilt or Punishment</u>.

Evidence is material only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed. *United States v. Bagley*, 473 U.S. 667, 682. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* The items of suppressed evidence should be viewed collectively, not item by item. *Kyles* v. Whitley, 514 U.S. 419, 436 (1995).

The Supreme Court has made clear that "materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles*, 514 U.S. at 434. Materiality is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263 (citations omitted). There is a "reasonable probability" of a different result when "the government's evidentiary suppression

undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434.

In Kirkpatrick's case, the Fifth Circuit has found that the presentation of the falsified evidence and the withholding of the exculpatory evidence from the jury might have led to a different result not only with respect to the sentence imposed on Kirkpatrick but also to the jury's consideration of his defense. *See Kirkpatrick*, 992 F.2d 491, 496. The conclusion must be the same in this case. Mr. Radoste's sexual preference, and Kirkpatrick's claim of self-defense were significant issues at the Petitioner's trial because they bear on the factual bases for Faulkner's defenses, including whether or not he had the required *mens rea* to be convicted of first degree murder as a principal.

The Court finds that Faulkner demonstrated the requisite reasonable probability that the outcome would have been different had the evidence not been suppressed and, therefore, that the evidence was material.

## VI. AEDPA STANDARD

After a review of the evidence and the record in this case, the Court finds that the Petitioner has established all three elements of his *Brady* claim and that the State Court's application of *Brady* was unreasonable in this case.

In the Reasons for Judgment, the State Court found that the withheld evidence was not material, whether used directly by the defense or as impeachment evidence. The Court stated that even if Kirkpatrick's initial blow to Radoste was prompted by an unwanted sexual advance, there "was no reason Faulkner and Kirkpatrick could not have fled" at that point. *See Faulkner v. Cain*, No. 96,597 at 5 (La. Dist. Ct. Nov. 26, 1996). Faulkner testified that while Kirkpatrick

was attacking Radoste he left the house with his suitcase and stood outside alone. *See* Trial Tr. at 848, Jan. 13, 1983. Faulkner could, and perhaps should, have run for help. Nevertheless, his failure to do so does not mean that he had the intent to commit murder. He may, as he testified, have been too afraid to flee. In any event, it is unreasonable to conclude that because he did not flee it was excusable to exclude exculpatory evidence which was material to his defense.[4]

"In our criminal justice system the prosecutor has at his disposal the substantial resources of the government as well as other considerable advantages. In exchange, the system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction." *Kirkpatrick*, 992 F.2d at 496. We may not, absent a thorough factual record, sweep away the exculpatory evidence on the assumption that the jury would have discarded it.

## VII. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that this petition for *writ of habeas corpus* pursuant to Title 28, United States Code § 2254, is **GRANTED**, releasing Petitioner Charles Faulkner unless the State notifies the Court within 120 days from the date a final Judgment is entered in this matter of its intent to retry petitioner.

---

[4] To convict Faulkner of first degree murder as a principal, the State must prove that Faulkner himself had the specific intent to kill or inflict great bodily harm on Radoste. *See, e.g.*, La. R.S. 14:30; *State v. Holmes*, 388 So. 2d 722, 726 (La. 1980). The exculpatory evidence in this case goes directly to Faulkner's defense that if Kirkpatrick killed in anger, or for any other reason that cannot be imputed to Faulkner, then he, Faulkner, cannot be guilty of first degree murder as a principal.

Thus done this __6__ day of February, 2001, in New Orleans, Louisiana.

_____
UNITED STATES DISTRICT JUDGE